STATE, RESPONDENT, v. SEARLE, APPELLANT.

No. 9069.

Submitted October 23, 1951. Decided January 21, 1952.

239 Pac. (2d) 995.

468

Messrs. DeKalb, Dockery & Symmes, Lewistown, Mr. Wellington D. Rankin, Mr. Arthur P. Acher, Helena, for appellant. Mr. Arnold H. Olsen, Atty. Gen., Mr. Glen E. Cox, Asst. Atty.

Gen., Mr. J. E. McKenna, County Atty., Mr. Donald E. Ronish, Deputy County Atty., Lewistown, for respondent.

Mr. Acher, Mr. Weymouth D. Symmes, Mr. Rankin, Mr. Cox, Mr. McKenna and Mr. Ronish argued orally.

MR. JUSTICE ANGSTMAN:

Defendant was charged with, tried and convicted of the commission of a felony involving a named boy of tender years in violation of R. C. M. 1947, sec. 94-4118, committed on or about March 17, 1950. His motion for a new trial was denied and he has appealed from the judgment sentencing him to imprisonment for 25 years, and from the order denying his motion for a new trial.

One of the assignments of error raises the question whether the court committed error in permitting the calling of several witnesses designed to show other offenses committed in the same manner that the offense charged was committed against the named individual after the court had ruled that such evidence was inadmissible. The evidence shows that defendant employed the prosecuting witness on the evening of March 16, 1950, and again on March 17, 1950, to work at his place of business in Lewistown. The prosecuting witness told in detail how on the evening of March 17th defendant committed the act for which he was charged, at which time no one other than defendant and the prosecuting witness was at the place of business of defendant. The state thereupon called to the witness stand another boy who had been employed by defendant who was asked why he had gone to defendant's place of business. Defendant objected to this question. A recess was taken during which time the state, in the absence of the jury, made an offer to prove that the defendant had on separate occasions committed similar offenses with the witness. Defendant's objection to such offer of proof was sustained. Notwithstanding this ruling by the trial court, the state called another boy to the witness stand who had been at defendant's place of business and asked him why he had gone there. Another recess was taken and defendant

made this general objection: "The defendant objects to the continual placing of further witnesses on the stand on the part of the state to testify as to facts which the court has heretofore ruled inadmissible, on the ground that it tends to put before the jury indirectly matters which they cannot put before the jury directly, and we object to the state seeking to offer to put on the witness stand any more witnesses who they will attempt to have testify to other acts with other persons similar to those charged in the information. There is no objection to offers of proof in which the witnesses may be named and treated the same as if on the stand, but names of further witnesses should be placed in the offers of proof rather than put upon the witness stand."

This objection was overruled and several more boys were placed upon the witness stand and after the usual preliminary questions, each was asked why he had gone to defendant's place of business. The court sustained the objection of defendant to these questions. Defendant sought to have the effect of the state's manner of placing the witnesses upon the stand minimized by an offered instruction, but this the court refused to give.

It is our view that prejudicial error was committed by the ▮ calling of these witnesses and placing them upon the witness stand and asking them why they had gone to the defendant's place of business, after the court had ruled that such evidence was inadmissible. The rule is stated in 64 C. J., Trial, p. 135, sec. 156, as follows: "Evidence of the same kind as that previously ruled incompetent should not be repeatedly offered in the hearing of the jury, and if so offered, even though rejected, may be ground for reversal."

This state gave application to this principle in the cases of State v. Kanakaris, 54 Mont. 180, 169 Pac. 42; State v. Belland, 59 Mont. 540, 197 Pac. 841; State v. Shannon, 95 Mont. 280, 26 Pac. (2d) 360; and State v. Peterson, 102 Mont. 495, 59 Pac. (2d) 61. To the same effect is 16 C. J., "Criminal Law," p. 892, sec. 2229, par. 2, 23 C. J. S., "Criminal Law," sec. 1087.

The same rule is stated in 53 Am. Jur., "Trial," p. 360, sec. 459, as follows: "Other instances of misconduct are the wilful bringing in or attempting to bring in of irrelevant, previously excluded, or incompetent evidence for the purpose of prejudicing the opposing party * * *."

The state takes the view that the court erred in excluding this class of testimony and that therefore no prejudice resulted to the defendant. Were we to assume that such evidence were admissible, it would still not follow that the defendant has had a fair trial. The court excluded such evidence and in that manner deprived the defendant of the right of cross-examining these boys on the vital questions touching upon supposed offenses similar to that charged by the prosecuting witness. True, they were not permitted to testify to those facts, but the reasonable inference to be drawn by the jury was that the defendant had committed like acts upon the several boys involved.

In view of the foregoing the court erred in denying defendant's motion for a new trial. Since a new trial must be had other questions require consideration and particularly whether evidence of other similar offenses was or is admissible.

The rule in this state is that such evidence is incompetent and the court properly ruled against its admissibility. State v. Sauter, 125 Mont. 109, 232 Pac. (2d) 731.

Defendant contends that he was unduly restricted in the cross-examination of the prosecuting witness. Defendant sought to develop upon cross-examination of the prosecuting witness that he was an accomplice. The prosecuting witness admitted that he knew it was wrong to do what he did. He was then asked: "Q. And you knew you were not allowed to do that under the law?" An objection to this question was sustained by the court. The court, however, gave to the jury the following instruction over defendant's objection: "You are instructed that in order to constitute a minor an accomplice in the perpetration of a crime, it must appear by clear proof that at the time of committing the act the child understood the nature and effect of the act that constituted the offense, that the act

was forbidden, that he knew he was committing a wrongful act, and that he actually and knowingly consented to be a party to the alleged offense.'' This instruction was practically in the language of the court's opinion in the case of People v. Williams, 12 Cal. App. (2d) 207, 55 Pac. (2d) 223. The instruction was proper, but defendant was unduly restricted in the cross-examination of the prosecuting witness in not being permitted to develop the fact that he knew the act in question was forbidden by law.

The next question raised by defendant is that he was unduly restricted in the cross-examination of the prosecuting witness in matters which tended toward his impeachment. He contends that he should have been permitted to show that the witness had made statements inconsistent with his present testimony under the express provisions of section 93-1901-12. The prosecuting witness had testified that on the evening of March 17th, after working at defendant's place of business for about a half hour, he started to go home, and defendant said, ''Wait a minute, aren't you going to take the swats tonight?'' Thereupon about twelve swats were administered to the witness by the defendant with a clothesline rope, and defendant then gave the prosecuting witness a five dollar bill, which the witness showed to his mother when he got home, telling her that it was for the swats. And he told her that he had no other money. He also testified that he had no other money before then except 50 cents a couple of days before, which his mother gave him. He denied that he had gotten any money from the Montana or Monarch Lumber Company before the 17th of March. Defendant sought to show that at a juvenile hearing before the district court of Fergus county the prosecuting witness had testified to the effect that he had gone into the Montana and Monarch Lumber Company and taken ten dollars on March the 12th. The objection to this testimony was sustained upon the ground that such proceedings before the juvenile court are in the nature of confidential communications by virtue of R. C. M. 1947, sec. 10-611, which reads in part as follows: ''The disposition of the

delinquent child or any evidence given in the court shall not be admissible as evidence against the child in any other case or proceeding.'' The court should have admitted this testimony. The prosecuting witness was not a party to this proceeding. The purpose of the statute above quoted is to protect the children who have been before the juvenile court, but the prosecuting witness here is not a party to this proceeding and the purpose of the statute is not defeated by allowing statements made by him in the juvenile proceedings inconsistent with those made here to be used for the purpose of impeachment.

The state relies upon the case of Malone v. State, 130 Ohio St. 443, 200 N. E. 473, as sustaining the view that the record of the juvenile court is inadmissible whether sought to be used against the child as a party or as a witness. But that case did not deal with contradictory statements made by the child as here. The same is true of State v. Kelly, 169 La. 753, 126 So. 49, relied on by the state. The other case relied on by the state is State v. Cox, Mo. Sup., 263 S. W. 215, 217. That case supports the view taken by the trial court here, but the statute there considered was broader than ours. The Missouri statute considered in State v. Cox provided that, ''any evidence given in such cases shall not in any civil, criminal or other cause or proceeding whatever in any court be lawful or proper evidence against such child *for any purpose whatever,* except in subsequent cases against the same child under this article.'' V. A. M. S. sec. 211.010. Emphasis supplied. The force of the opinion is likewise weakened because of the following statement made by the court: ''The prosecutrix denied that she testified in the juvenile court the act of sexual intercourse with defendant occurred down stairs. It does not appear from the record, that any testimony was offered showing that she had made such statements, even if the latter were competent under said statute. Hence there would be no sufficient basis upon which prejudicial error might be adjudged.''

Here the prosecuting witness was not permitted to state whether he made a contrary statement before the juvenile court.

Had he admitted doing so, there would have been no occasion to go further into that question. But if he denied making such statement then it would be competent to impeach him by evidence of contradictory statements given elsewhere as testimony, sec. 93-1901-12, and this even though such other statements were made in a juvenile court in proceedings against him.

Defendant next contends that his motion for a directed verdict or motion directing the jury to acquit the defendant should have been granted. He contends that the evidence shows the prosecuting witness to be an accomplice and that there is no corroborating testimony. His motion is therefore based upon R. C. M. 1947, sec. 94-7220, which provides: "A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof."

The answer to this contention is that there is sufficient evidence tending to show that the prosecuting witness was an unwilling participant and that he submitted to the acts in question through fear and intimidation to make the question one for the jury. The court properly denied defendant's motion.

Defendant requested an instruction to the effect that if the jury found that the prosecuting witness was an accomplice within the meaning of the instructions given, then they must acquit him for the reason that there is no evidence tending to connect the defendant with the commission of the crime other than that of the prosecuting witness. This offered instruction should have been given. A careful review of the evidence discloses that the conviction stands upon the uncorroborated testimony of the prosecuting witness. There was no corroboration within the rule stated and applied in State v. Keckonen, 107 Mont. 253, 84 Pac. (2d) 341.

The only other assignment of error that requires consideration is that relating to defendant's application for change of place

of trial. Little need be said on this point at this time. Defendant's application was on two grounds, first, that the people of Fergus county are so prejudiced against him that he cannot have a fair trial, and second, that defendant believes it will be impossible to obtain a jury in the county that has not formed an opinion as to the guilt or innocence of defendant. The second ground of the motion has in effect been abandoned.

In support of the first ground defendant filed 75 affidavits of residents of Fergus county from all walks of life, including doctors, business men, elevator operators, ranchers, postal employees, hotel operators, railroad employees, bankers, optometrists, cleaners, creamery men, and others. A strong showing was made tending to show prejudice against him and that the atmosphere was so hostile against him in Fergus county that he could not be expected to have a fair trial in that county. The state filed 66 affidavits of residents, nearly all practically in the same form, in which they asserted in substance that any prejudice existing would not in their opinion prevent obtaining a fair and impartial jury. Oral evidence was also introduced at the time of hearing the motion.

The court denied the motion temporarily with the right of defendant to renew the application ''during the proceedings in the matter of impaneling a jury.''

We do not feel called upon to express an opinion as to whether the court erred in denying the motion within the rule followed in State v. Davis, 60 Mont. 426, 199 Pac. 421; State v. Bess, 60 Mont. 558, 199 Pac. 426; State v. Hoffman, 94 Mont. 573, 23 Pac. (2d) 972; and other cases. It is well known that prejudice and indignation existing at and immediately after the commission of a heinous crime often subsides with the passage of time. It is possible that the prejudice existing at the time of the commission of the offense and prior to the trial may have subsided before the case is again brought to trial. A change of venue may be again asked before the new trial. R. C. M. 1947, sec. 94-6906. If the application is again made the inquiry must be limited to whether the defendant can then

have a fair and impartial trial at the second trial. Baker v. State, 209 Ala. 142, 95 So. 467; Hawes v. State, 88 Ala. 37, 7 So. 302.

The judgment and order denying a new trial are reversed. The cause is remanded with directions to grant the defendant a new trial and defendant is allowed the privilege of renewing his motion for change of venue is he so desires.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY and FREEBOURN, concur.

MR. JUSTICE METCALF: (dissenting).

Since the decision of this court in State v. Peres, 27 Mont. 358, 71 Pac. 162, a uniform rule respecting the admissibility of evidence of other similar offenses has been repeatedly applied. The rule has been variously stated in the cases but its import has remained constant. A typical statement is: "It is the general rule, that upon the trial of one accused of crime, evidence of a distinct and independent offense is not admissible. To enlarge the scope of the inquiry beyond the facts pertinent to the offense for which the accused is being tried would ordinarily subject him to the danger of surprise against which no possible foresight might be able to prepare and no innocence defend. But, if particular facts tend to establish an element of the offense for which he is being tried, they may be proved and the evidence is not the less relevant because it may disclose or tend to disclose that the accused had committed another crime." State v. Hopkins, 68 Mont. 504, 219 Pac. 1106, 1108.

In addition to the element of surprise mentioned the courts have been reluctant to admit evidence of other offenses because collateral issues are brought in that have no place in the orderly conduct of a trial and particularly where the crime charged is a revolting one the jury is prejudiced because they are convinced that the defendant is a bad man and should be punished whether or not they are certain he is guilty of the crime charged. "From the time when advancing civilization began to recognize

that the purpose and end of a criminal trial is as much to discharge the innocent accused as to punish the guilty, it has been held that evidence against him should be confined to the very offense charged and that neither * * * bad character nor commission of other specific disconnected acts, whether criminal or merely meretricious, could be proved against him. This was predicated on the fundamental principle of justice that the bad man no more than the good ought to be convicted of a crime not committed by him." State v. Ebel, 92 Mont. 413, 15 Pac (2d) 233, 237, quoting from Paulson v. State, 118 Wis. 89, 94 N. W. 771, 774.

Nevertheless certain evidence of this nature is of sound probative value and logically should be admitted. Therefore, the above general rule has been qualified by certain so-called exceptions.

"The rule, not questioned, is that evidence of other acts of a like nature is admissible to prove a uniform plan or course of action on part of the accused for the purpose of disclosing his motive, guilty knowledge or criminal intent, or to negative the idea that the particular offense complained of was the result of mere inadvertence, accident, or mistake; and, if such evidence also tends to establish the commission of another offense, it is not for that reason inadmissible." State v. Cassill, 70 Mont. 433, 227 Pac. 49, 52.

Some of the cases in which the above exceptions have permitted the introduction of evidence relating to other offenses are:

*Statutory Rape:* State v. Gaimos, 53 Mont. 118, 162 Pac. 596; State v. Keeler, 52 Mont. 205, 156 Pac. 1080, L. R. A. 1916E, 472, Ann. Cas. 1917E, 619; State v. Vinn, 50 Mont. 27, 144 Pac. 773; State v. Peres, 27 Mont. 358, 71 Pac. 162.

*Forgery:* State v. Mitton, 37 Mont. 366, 96 Pac. 926, 127 Am. St. Rep. 732; State v. Newman, 34 Mont. 434, 87 Pac. 462.

*Larceny:* State v. Semmens, 105 Mont. 113, 71 Pac. (2d) 913; State v. Lund, 93 Mont. 169, 18 Pac. (2d) 603; State v. Hughes,

76 Mont. 421, 246 Pac. 959; State v. Hall, 45 Mont. 498, 125 Pac. 639; State v. McCarthy, 36 Mont. 226, 92 Pac. 521.

*Burglary:* State v. Hill, 46 Mont. 24, 126 Pac. 41.

*Robbery:* State v. Hopkins, 68 Mont. 504, 219 Pac. 1106.

*Receiving Stolen Property:* State v. Keays, 97 Mont. 404, 34 Pac. (2d) 855; State v. Groom, 89 Mont. 447, 300 Pac. 226; State v. Moxley, 41 Mont. 402, 110 Pac. 83.

*Murder:* State v. Simpson, 109 Mont. 198, 95 Pac. (2d) 761.

*Sale of Intoxicating Liquor:* State v. Cesar, 72 Mont. 252, 232 Pac. 1109; State v. Roop, 73 Mont. 177, 235 Pac. 336.

*False Statements:* State v. Cassill, 70 Mont. 433, 227 Pac. 49.

Rule 311 of the American Law Institute's Model Code of Evidence declares that ''evidence that a person committed a crime or civil wrong on a specified occasion is inadmissible as tending to prove that he committed a crime or civil wrong on another occasion if, but only if, the evidence is relevant solely as tending to prove his disposition to commit such a crime or civil wrong or to commit crimes or civil wrongs generally.''

Such a test would eliminate any reference to a predisposition to a crime, but would make relevance the sole question of admissibility otherwise. That is apparently the rule in England, Stone, The Rule of Exclusion of Similar Fact Evidence: England, 46 Harv. Law Rev. 954 (1933). Logically that would seem to be the proper rule. See the thorough analysis of this question in Stone, The Rule of Exclusion of Similar Fact Evidence: America, 51 Harv. Law Rev. 988 (1938).

However, this jurisdiction has usually expressed the rule as a general rule of exclusion subject to the different categories of exceptions, i. e., admissible to show intent or malice, motive, guilty knowledge, plan or system, identity or for corroboration. But see State v. Lund, 93 Mont. 169, 18 Pac. (2d) 603, 610: ''Ordinarily, in a criminal case, testimony is admissible against a defendant in regard to other similar offenses''. Within those categories the evidence of other similar offenses has always been admissible providing it was relevant. ''The test is, not whether the offered evidence tends to prove an independent offense, but

whether it is relevant as tending to prove any fact material to the issue in the case before the court.'' State v. Cesar, 72 Mont. 252, 232 Pac. 1109.

In the cases in which evidence of other offenses was refused such refusal was grounded upon the lack of relevance or the remoteness of the offered evidence. Examples are: State v. Simanton, 100 Mont. 292, 49 Pac. (2d) 981; State v. Ebel, 92 Mont. 413, 15 Pac. (2d) 233; State v. Moxley, 41 Mont. 402, 110 Pac. 83; State v. Knox, 119 Mont. 449, 175 Pac. (2d) 774.

The case of State v. Sauter, 125 Mont. 109, 232 Pac. (2d) 731, was no different. The rule in State v. Sauter was quoted from 44 Am. Jur., Rape, p. 948, sec. 79. ''The courts universally refuse to admit evidence of the commission of other and distinct crimes where such evidence is not otherwise relevant, and * * * it is well settled on a prosecution for rape that evidence of another rape or other sex crime committed at a different time and on or against another person, *and having no connection with the crime charged,* is not admissible.''

And from 22 C. J. S., Criminal Law, sec. 682, p. 1084: ''The general rule, which is subject to exceptions stated in secs. 683-690, infra, is that, on a prosecution for a particular crime, evidence which shows or tends to show that accused has committed another crime wholly independent of, and unconnected with, that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible''. The exceptions enumerated in secs. 683-690 are the same that have been made in previous Montana cases.

In State v. Sauter, Justice Angstman and I did not disagree with the general rule as cited but we were of the opinion that the other crime shown did have a ''connection with the crime charged'', that it was not a ''crime wholly independent of, and unconnected with'' the crime for which the defendant was on trial and therefore the evidence was admissible.

But even though the general rule with all its exceptions was quoted with approval as the basis for the Sauter decision, we now learn that the rule therein promulgated is a flat declaration

that evidence of other crimes is not admissible for any purpose. This constitutes a reversal of many precedents in the criminal law of this state.

The state called the other boys to testify that the defendant committed the same acts upon them. In its offer of proof the state submitted evidence to show "that the acts in connection [with the other boys] were committed in the same manner, in the same place and under circumstances of a general plan of operation, scheme and course of conduct."

One of the exceptions noted in the C. J. S., citation quoted in State v. Sauter is as follows: "As a general rule, evidence of other crimes is competent when it tends to establish a common scheme, plan, or system, at least where such other crimes are similar to, closely connected with, and not too remote from, the one charged." 22 C. J. S., Criminal Law, sec. 688, p. 1109.

Actually the Sauter Case held that the evidence of the other offense was not relevant. "Sexual acts, whether rape or no rape, originating in barroom pickups, powered by the urge, and consummated in automobiles, are entirely too common in this day and age to have much evidentiary value in showing a systematic scheme or plan." Likewise the dissent was on a question of relevance and not on the validity of the rule of exclusion.

The rule as stated in previous Montana cases is plain. By requiring that the evidence admitted under the various categories be relevant the danger of surprise on collateral matters is avoided. Prejudice is inevitable in such matters. The mere charging of an individual with a heinous or revolting crime creates prejudice. But as in analogous cases in other fields of the law the answer to this dilemma is in each case to leave it to the sound judicial discretion of the trial judge to determine if the offered evidence is relevant and proper. This has been done in statutory rape and incest cases where the victim was of tender years, so that the other offenses shown were as revolting as in the instant case. There is no reason why the same rules aren't applicable to a crime against nature.

I believe the evidence offered relating to similar offenses

committed upon the bodies of other boys was admissible. There were enough points of similarity that a common plan or design to debauch the prosecuting witness was shown. The testimony was also admissible to corroborate the prosecuting witness.

MR. JUSTICE ANGSTMAN:

Having disagreed with the majority opinion in State v. Sauter, 125 Mont. 109, 232 Pac. (2d) 731, I accept the ruling in that case as *stare decisis* when applied to sex crimes, and since I see no substantial distinction between the facts showing plan, design and purpose in that case and those here involved, I think it rules this case.