STATE, Respondent, *v.* TONER, Appellant.

No. 9305.

Submitted October 7, 1953. Decided November 25, 1953.

264 Pac. (2d) 971.

284

Joseph M. Goldman, Missoula for appellant.

Arnold H. Olsen, Atty. Gen., Charles W. Leaphart, Asst. Atty. Gen., John A. Forsythe, County Atty., Missoula, for respondent.

Mr. Goldman and Mr. Leaphart argued orally.

MR. JUSTICE ANDERSON:

The defendant, William Toner, age 72, was charged with having committed a crime against nature. He was tried and found guilty by a jury. Upon the recommendations of the jury that defendant be given a severe penalty, he was sentenced to 18 years in the penitentiary. It is from this judgment and from an order denying a motion for a new trial that defendant appeals.

This court in the case of State v. Keckonen, 107 Mont. 253, 84 Pac. (2d) 341, 346, said: "Crimes against nature are naturally revolting to a normal person, and the subject is truly a loathsome one. In such cases, jurors are sometimes moved by abhorrence of the offense to convict upon slight evidence. * * * this fact alone should be enough to put a tribunal assiduously on

guard against yielding to the dictates of such intense prejudice.''

The challenges made to the proceeding below are confined generally to alleged errors committed by the county attorney and by the district judge presiding. Our concern is, did the defendant have a fair and impartial trial according to the rules prescribed by the laws of this state. Difficulty was encountered by defendant's counsel in getting the bill of exceptions settled by the district judge and this court found it necessary to appoint a referee to settle that dispute. We have before us the findings of the referee and those findings have been adopted by this court.

The defendant contends that prejudicial error was committed by the county attorney and the district judge because of the following proceedings set forth in the record: ''Mr. Forsythe [the county attorney] made a statement to the jury to the effect that, while there was evidence of other acts involving the defendant and the witness Hildebrandt, the date of February 13th was charged because that was the only date on which there was corroboration by another witness, to which statement Mr. Goldman objected:

''Mr. Goldman: At this time we object to that last remark of counsel, for the reason that there was nothing in the evidence to substantiate that remark of counsel.

''The Court. Go ahead with the argument.

''Mr. Forsythe: This is the one act on which we have corroboration.

''Mr. Goldman: The objection is made to the comment of counsel that it is upon evidence which does not exist in the case.

''The Court. Go ahead.

''Mr. Forsythe, continuing his argument, made the remark, in effect, that the State had subpoenaed 27 witnesses, 14 of whom were boys, but had called only four.

''Mr. Forsythe: Why didn't we call the rest? They were character witnesses.

''Mr. Goldman: Counsel for the defendant objects at this time to the remarks of counsel because the comment is upon evidence which is not in the case.

286

"The Court. Go ahead, Mr. Forsythe.

"Mr. Forsythe: Each one of these witnesses was ready, willing and able—

"Mr. Goldman: (Interrupting) I have objected twice to that same remark.

"The Court. Go ahead.

"Mr. Forsythe: I will say that 14 of these witnesses were boys, who had been in his home many times.

"Mr. Goldman: I object to this for the reason that the comments are upon matters that do not exist in this case.

"The Court: I take it our record shows these objections. Counsel objects without stating what he objects to.

"Mr. Goldman: I stated that the remarks made by counsel were not borne out in the case.

"The Court: You should state the remarks, and then make your objections. If you don't do that, there is nothing for the Court to rule on.

"Mr. Goldman: Then I make the further objection, stating the remarks to which I object.

"The Court: What remarks do you object to?

"Mr. Goldman: The remarks wherein he stated that these were character witnesses, and he couldn't bring them in. We object to that for the reason it isn't in the case at all, and wasn't brought in by the State.

"The Court: Now there is something for the Court to rule on—your objection to that remark that the County Attorney made. The objection is sustained. Unless you state what you object to, there is nothing for the Court to rule on. The reporter is not putting down every statement that the County Attorney makes. When you refer to certain statements, he will put them down. The last time you stated what you were objecting to, and your objection is sustained.

"Mr. Goldman: If the Court please, we wish now to make an objection to the remarks, the reference by counsel for the State pointing out the tactics of defendant's counsel, when the Court has already sustained the objections of defendant's counsel.

"The Court: That is sustained. Go ahead.

"Mr. Goldman: We make an objection to the statement of counsel to the effect that he has two sons of his own that he would hate to bring up with this man around.

"The Court: Overruled. It seems to be mere argument."

It is contended that the above facts prejudiced the jury.

In the case of State v. Searle, 125 Mont. 467, 239 Pac. (2d) 995, 997, this court held it to be error where the state called witnesses and asked them why they had gone to the defendant's place of business, after the court had ruled that such evidence was inadmissible. It is our opinion that the comments of the county attorney in the instant case regarding the fact that 14 other boys had been in defendant's home many times would obviously have the same effect upon the jury as did the placing of the boys on the witness stand and asking them an incompetent question, which was done in the Searle case.

The court went on to say in the Searle case: "True, they [the boys] were not permitted to testify to those facts, but the reasonable inference to be drawn by the jury was that the defendant had committed like acts upon the several boys involved." In the instant case the only possible reason for the county attorney's comments on the 14 other boys being character witnesses would be to have an unjustified inference drawn by the jury. In the Searle case, supra, this court held that the defendant was deprived of the right to cross-examine because of the ruling of the district judge and therefore defendant did not have a fair trial and a new trial was ordered. The prejudicial error committed in the Searle case is present here and the motion for a new trial should have been granted.

"A statement by counsel in argument of facts not in evidence or a misstatement of the evidence is generally regarded as reversible error. This is true both in civil and criminal cases, especially if the statement of facts not in evidence is wilful." 3 Am. Jur., Appeal & Error, sec. 1073, p. 613.

An accused, no matter how guilty in point of fact he may be, is entitled to be tried in an orderly manner.

288

It appears from a mere reading of the evidence which is spelled out above that the judge had ample information as to what statement counsel objected. He heard the remarks made by the county attorney which were instantly objected to and the most that could have been done by defense counsel repeating the remarks would be to still further impress the jury with improper statements.

It has been said many times that the concern of a court of last resort is not with the guilt or the innocence of the accused for that is the concern of the jury. The appellate court is to determine whether the defendant had a fair trial without being prejudiced by violation of the rules which have been promulgated to safeguard every person from improper and malicious prosecution.

In the case of Berger v. United States, 295 U. S. 78, 55 S. Ct. 629, 633, 79 L. Ed. 1314, the court said: "The prosecuting attorney's argument to the jury was undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury. * * *

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such he is in a peculiar and very different sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." We endorse the above admonition.

It is argued by the state that the case in chief was a strong one against the defendant and that a reversal should only follow when weakness of the case accentuates the probability of

prejudice to the accused. Although such an argument may be compelling in some cases, in the instant case the jury not only found the defendant guilty but also recommended a severe penalty. Under such circumstances prejudice to the cause of the accused is so highly probable that we are not justified in assuming its nonexistence.

The defendant complains that prejudicial error was committed by the county attorney in cross examination of defendant's witness Lawrence Triplett. The questions propounded to Mr. Triplett, the court's ruling and Mr. Triplett's answers are as follows:

"Cross-Examination by Mr. Forsythe:

"Q. Mr. Triplett, you testified here this morning? A. Yes, sir.

"Q. You stated you are in the county jail? A. Yes, sir.

"Q. What are you in there for? A. Drunk driving.

"Q. Have you ever been convicted of a felony? A. I was.

"Q. Did you serve time in the state penitentiary for that? A. Yes, sir.

"Mr. Goldman: I object to any further questions on those lines.

"The Court: The question of whether he served time follows the first question. Overruled.

"Q. Did you serve time in the state penitentiary? A. I did.

"Q. How many times have you been arrested?

"Mr. Goldman: We object to that on the ground it is not proper impeachment.

"Q. Do you know how many times you have been arrested?

"Mr. Goldman: Object to that for the same reason.

"The Court: Overruled.

"Q. Do you know how many times you have been arrested? A. No.

"Q. It's so many you can't remember? A. I wouldn't say that.

"Q. Do you know how many times you have been in the Missoula County Jail? A. About four times.

"Q. How many times in the jail in Hamilton?

"Mr. Goldman: We object to that on the ground it is not proper impeachment.

"The Court: It seems to have to do with the place of residence. Overruled.

"Q. Would you answer the question? If you can't remember say so. A. I can't remember. I have been in there a time or two.

"Q. The fact is you have been in jail so many times you can't remember how often?

"Mr. Goldman: Object to that for the same reasons.

"The Court: Overruled.

"Q. Isn't that right? A. I keep no diary of it.

"Q. It is so normal for you to be in jail you don't take any special recognition of it? Isn't that true?

"Mr. Goldman: We object to the remarks of the County Attorney.

"The Court: Overruled."

R. C. M. 1947, sec. 93-1901-11, provides as follows: "A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a felony."

The error committed by the county attorney and compounded by the rulings of the court below appear so obvious, in view of the statute above, that comment thereon seems unnecessary. "The accused in every criminal case is entitled as a matter of right to a fair and impartial trial. It cannot be said that a defendant has had a fair and impartial trial where the prosecutor continually asks the defendant or his witnesses prejudicial and incompetent questions." Potter v. State, 91 Okl. Cr. 186, 217 Pac. (2d) 844, 847, 20 A. L. R. 2d 1416. See also, State v. Coloff, 125 Mont. 31, 231 Pac. (2d) 343.

Defendant contends that it was error to permit the prosecuting witness Hildebrandt to testify that the defendant had committed

other similar acts upon him, citing State v. Sauter, 125 Mont. 109, 232 Pac. (2d) 731; State v. Searle, 125 Mont. 467, 239 Pac. (2d) 995; and State v. Hale, Mont. 249 Pac. (2d) 495.

The case at bar is clearly distinguishable from the cases cited ▓▓ and under the facts in the instant case we do not find error in admitting the testimony of the prosecuting witness of other similar acts claimed to have been committed upon him. 22 C. J. S., Criminal Law, sec. 691, page 1170.

An examination of the other errors assigned reveals that they are without merit. For the reasons herein stated the judgment of the district court is reversed with directions to grant the defendant a new trial.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY and FREEBOURN, concur.

MR. JUSTICE ANGSTMAN:

I concur in the foregoing opinion but by so doing I am not to be understood as agreeing to what was held in State v. Coloff cited and relied on therein.